STATE of Minnesota, Respondent,

v.

Ruben James SALAZAR, Appellant.

No. C9–92–228.

Supreme Court of Minnesota.

Sept. 3, 1993.

John M. Stuart, State Public Defender, Susan H. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Lisa A. Berg, Asst. County Atty., Minneapolis, for respondent.

TOMLJANOVICH, Justice.

Defendant, Ruben James Salazar, appeals his convictions of criminal sexual conduct for sexually abusing two children in the house of his sister, with whom he was residing. The children were J., his 5–year–old niece, *i.e.*, the daughter of his sister, and S., the 8–year–old daughter of his sister's best friend, who slept in the house one night. This appeal follows an unpublished decision by the court of appeals, to which we earlier remanded the case with instructions "to engage in the kind of analysis contemplated by *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), articulating the circumstances surrounding the making of the out-of-court statements demonstrating the particular trustworthiness of the statements." Although we disagree in part with the analysis of the court of appeals on remand, we affirm defendant's convictions.

S., her younger sister, and her mother spent a night at the house in question in late September or early October of 1990. A week later, when her grandmother asked her how the visit went, S. told her about defendant's sexually assaulting her. It ap-

pears that initially, this act by defendant was punished extrajudicially by S.'s uncle, who "beat" defendant because of his conduct. The police learned about the sexual assault but the police at that time did not forward the file to the county attorney for charging. Defendant's sister, upon learning of the allegation made against defendant by her friend, the mother of S., refused to believe that defendant had done anything wrong. This resulted in defendant's sister becoming temporarily estranged from S.'s mother.

A month later, however, defendant's sister and her boy friend, who was the primary caretaker of her children, noticed a strange odor about the body of 5-year-old J. He took the child to a clinic at Minneapolis Children's Hospital. This clinic is the clinic to which J. was regularly taken for vaccinations and medical problems. J. had been there several months earlier. The doctor who examined J., noted redness in her genital area and a very thinned or stretched hymen, both consistent with vaginal penetration. Suspecting that J. had been sexually penetrated, the doctor arranged for a follow-up "team" examination five days later for the purpose of determining whether or not his initial tentative diagnosis was correct. In the interval, J. and R., J.'s brother who is two years older, told their mother that defendant had put his "pee pee" into J.'s "lu lu" (her vagina).

During the team examination J. told a social worker that defendant had touched her "lu lu" and, using dolls, she demonstrated that he had penetrated her vagina with his penis. The hospital referred the case to the county, which arranged for J. to be interviewed at CornerHouse, where J. and her brother made more statements.

The confrontation clause issue stems from the fact that J. and R. did not testify at defendant's trial. The trial court admitted (a) testimony of the doctor who examined J. in early December 1990, (b) testimony of J.'s mother that after J.'s first visit to the doctor, J. and R. talked about defendant's having abused J., (c) testimony as to J.'s statements to a social worker who interviewed her as part of the team examina-

tion at the hospital, and (d) video tapes of the CornerHouse interviews of J. and R.

Defendant was convicted of abusing both S. (who testified) and J. (who did not testify).

We are concerned with the admission of (b), (c) and (d).

The court of appeals on remand ruled that the testimony as to the statements to the mother was improperly admitted under *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), because the mother's questions to J. were leading. It ruled further, however, that any error in admitting that testimony was harmless.

The court of appeals ruled that the testimony as to the statements to the social worker at the hospital were admissible under Minn.R.Evid. 803(4) (statements for purpose of medical diagnosis or treatment).

Finally, the court ruled that the video tape interviews at CornerHouse were admissible under an *Idaho v. Wright* analysis.

■ 1. We believe the court of appeals erred in concluding that the mother's testimony was inadmissible under *Idaho v. Wright.* We believe the trial court properly admitted the testimony. The mother testified that upon learning that the doctor *suspected* sexual abuse, she asked J. to tell her who had abused her. J. was unresponsive. She then made a list of all the boys and men who had been with J., with defendant's name at the *end* of the list. She went down the list, name by name. It was not until she got to defendant's name that she received an unusual response. At this point, with great reluctance because she did not want to believe that her brother could do such a thing to his own niece, she focused on the defendant. R. then came forward saying that there was no need to be mean to J., that the abuse had occurred and that he had seen it. As he put it, "Uncle Ruben" put his "pee pee" into J.'s "lu lu."

The question, a legal question, is whether the circumstances surrounding the making of the statements to the mother show

that the statements possessed "particular guarantees of trustworthiness," *Idaho v. Wright,* 497 U.S. 805, 814–17, 110 S.Ct. 3139, 3145–48, 111 L.Ed.2d 638 (1990). As we said in our summary of *Wright* in *State v. Lanam,* 459 N.W.2d 656, 661 (Minn. 1990), *cert. denied,* 498 U.S. 1033, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991):

> These circumstances [surrounding the making of the statements] include, but are not limited to, whether the statements were spontaneous, whether the person talking with the child had a preconceived idea of what the child should say, whether the statements were in response to leading or suggestive questions, whether the child had any apparent motive to fabricate, and whether the statements are the type of statements one would expect a child of that age to fabricate.

Other circumstances, including ones identified by the Court in *Wright,* include the mental state of the child at the time the statements were made, the consistency of the statements during the same interview or conversation, and whether the child had an apparent motive to speak truthfully. *State v. Edwards,* 485 N.W.2d 911, 916 (Minn.1992), and *State v. Larson,* 472 N.W.2d 120, 125–26 (Minn.1991), *cert. denied,* — U.S. —, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992).

If there were any evidence that the mother had wanted the child to say that defendant was the one who committed the abuse, we might agree that the statements to the mother were unreliable. In fact, the mother clearly did not want to hear this and, accordingly, put defendant's name at the end of her list. The children had no apparent motive to fabricate. Moreover, the statements are not the type of statements one would expect children of this age to fabricate. This case is different from our recent case of *State v. Scott,* 501 N.W.2d 608 (Minn.1993). In that case, we ruled that an audiotaped interview between a child witness and a deputy and a social worker had been erroneously admitted into evidence. Unlike this case, in *Scott,* the deputy had asked suggestive and leading questions, which we held rendered the audiotape unreliable and that consequently the confrontation clause barred its admission. *Id.* at 619. Thus we found that the audiotaped interview did not have the "particularized guarantees of trustworthiness" required by *Wright,* and ruled the audiotape inadmissible.

Unlike *Scott,* the circumstances surrounding the making of the statements in this case show that the statements possessed "particular guarantees of trustworthiness." The court of appeals' conclusion that the trial court erred in admitting the mother's testimony is incorrect.

■ 2. We agree with the court of appeals' conclusion that the trial court did not err in admitting the statements J. made to the social worker member of the Children's Medical Center team examining her to determine whether the suspicions of the initial examining doctor were correct.

■ Statements made for the purpose of medical diagnosis or treatment "where the declarant knows that a false statement may cause misdiagnosis or mistreatment" contain "special guarantees of credibility," *White v. Illinois,* — U.S. —, —, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992). The United States Supreme Court has made it clear that the hearsay exception admitting such statements is a "firmly-rooted exception" and that therefore courts generally need not engage in an *Idaho v. Wright* kind of analysis if such statements are properly admissible under the rule. *Id.* at —, n. 8, and —, 112 S.Ct. at 742, n. 8, and 743. *See also State v. Larson,* 472 N.W.2d 120, 126 (Minn.1991). The mere fact that a child's statements are made to a doctor does not render the child's statements admissible under R. 803(4). *Wright,* 497 U.S. at 818, 110 S.Ct. at 3148. The statements are admissible only if the evidence suggests that the child knew she was speaking to medical personnel and that it was important she tell the truth. *Ring v. Erickson,* 983 F.2d 818, 820 (8th Cir.1992).

Defendant argued in the court of appeals and argues in this court that the R. 803(4) rationale does not support admission here

because the purpose of the examination at the Children's Medical Center was to merely substantiate abuse and that the record does not make it clear that the child knew her statements were relevant to diagnosis or treatment. The court of appeals did not address this issue but simply ruled that the social worker to whom the child made the statements was a member of the medical diagnostic team and therefor R. 803(4) applied. *Dana v. Department of Corrections*, 958 F.2d 237, 238–39 (8th Cir.1992), *cert. denied*, —— U.S. ——, 112 S.Ct. 3043, 120 L.Ed.2d 911.

The trial court admitted the transcript which indicates that defendant opposed admission of the social worker's testimony only on the ground that the social worker was not a medical doctor. No objection was made that the child did not know that it was important to tell the truth when being interviewed by a medical professional. Thus the trial court had no opportunity to reach this issue and the court of appeals properly did not address it. The trial court admitted the evidence under the medical diagnosis exception.

3. We agree with the court of appeals' analysis of the admission of the video-taped statements of the children, J. and R.

In summary, although we disagree in part with the analysis of the court of appeals on remand, we affirm defendant's convictions.

Affirmed as modified.