STATE of Minnesota, Respondent,

v.

Terri GUSTAFSON, petitioner,
Appellant.

No. CX–98–1465.

Supreme Court of Minnesota.

May 18, 2000.

---

John M. Stuart, Minnesota State Public Defender, and Michael F. Cromett, Assistant State Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, and John J. Muhar, Itasca County Attorney, Grand Rapids, for respondent.

## OPINION

BLATZ, Chief Justice.

Appellant Terri Gustafson appeals from a Minnesota Court of Appeals decision affirming her convictions for first- and second-degree assault for shooting her husband in the leg. Gustafson sought a new trial on the grounds that the jury should have received instructions on the defenses of self-defense and accident, or that her attorney's failure to request such instructions was ineffective assistance of counsel. The court of appeals concluded in a 2–1 decision that the evidence in the record did not support a self-defense instruction, and that because the jury was instructed on intent, the failure to give an accident instruction was not error. The court also held that Gustafson's attorney's representation was not deficient. We affirm because we agree that the trial court's failure to sua sponte instruct the jury on accident or self-defense was not plain error. We decline to reach Gustafson's ineffective assistance of counsel claim, but it is preserved so she may pursue it in a petition for postconviction relief.

On the evening of October 12, 1996, Gustafson and her husband Tim Peterson began arguing while driving home from a nearby bar where they had each consumed several alcoholic beverages. They arrived at their cabin-home sometime after 9 p.m. and Gustafson went inside, but Peterson decided to go to a friend's house for the night. Instead of leaving the property, however, Peterson drove to the end of their 120–foot driveway, "stayed there for awhile," and then drove back to the cabin.

A neighbor who overheard the incident testified that when Peterson returned to the cabin he was swearing and yelling "heck with this" and "I live here too." Peterson attempted to enter the cabin but found the door locked. He located a hammer and began pounding on the door handle in an attempt to break it. Two neighbors and a boater on the lake heard Peterson continue to swear and repeatedly yell "let me in" while he was pounding on the door handle. They also heard a muffled female voice, which sounded like it was coming from inside the cabin, yelling back.

Peterson eventually broke off the door handle. He punched the latch through, opened the door, and stepped into the cabin. He testified that when he turned on the light he saw Gustafson holding his shotgun so he yelled "well, why ·don't you just go ahead and shoot me then." In contrast, the neighbors testified that Peterson was still outside the cabin, banging on the door, when they heard him yelling "go ahead and shoot me" repeatedly.

Inside the cabin Peterson and Gustafson had a "discussion" about Peterson leaving for the night and needing his jacket and cigarettes. Peterson testified that Gustafson was holding the gun while they talked, but that it was pointed toward the floor. At some point the gun went off, striking Peterson in his right thigh. Peterson also testified that he believed Gustafson shot him accidentally, explaining that the sawed-off shotgun was over 20 years old, rusted, did not have a safety, and that the hammer had slipped in the past.

Gustafson called 911 and requested an ambulance for her husband. When asked by the 911 dispatcher what the problem was, Gustafson responded "uh – gunshot – accident," and "I shot him accidentally. I shot him accidentally." Later in the call, she said "I thought he was – I thought he was um – breaking in. * * * I – I didn't know. I thought he was breaking in."

When the police arrived on the scene, Gustafson initially told them that Peterson was cleaning his gun and shot himself. Shortly thereafter she admitted that she

shot Peterson. Gustafson told the police that her husband told her if she ever heard an intruder breaking in she should grab the shotgun and shoot them. She added that she was awakened by somebody pounding on the door, so she got the shotgun and shot him.

After Peterson was taken by ambulance to a hospital for treatment, the police recorded Gustafson's statement. She told them that she and Peterson had an argument, he went for a walk, and she fell asleep. She was awakened by a noise and grabbed her husband's gun, explaining that her husband "always told me – when I lived in Los Angeles, he always told me that that's – I should always use that [gun] if anybody's coming into the house." She added that Peterson "always told me if anybody's tryin' to come through that door, you take that and use that [gun]. Always." Gustafson was then asked by the police if she shot Peterson. Gustafson responded "It [sic] really didn't pull the trigger. It just went off. The g— d—— thing went off." When asked if she had aimed the gun, Gustafson replied, "Did I – oh, no, no. I just went like this. The g— d—— thing went off. I didn't even [unintelligible]. Oh, my God. I don't think I could even shoot somebody that's comin' through my door. Oh, God. * * * And I shot my husband."

Gustafson was charged with intentional discharge of a firearm; [1] assault in the second degree; [2] and assault in the first degree. [3] At trial, the state and the defense both discussed the defense of accident in their closing arguments. The state explained that the "one real defense is that the gun went off by accident." The defense argued that Gustafson repeatedly claimed the shooting was an accident at the scene, and that Peterson testified that the shooting was accidental. The defense also argued that given the old weapon and the influence of alcohol, "[i]t's almost a presumption of accident if not, in fact, a presumption of accident."

After closing arguments, the trial court instructed the jury that to find Gustafson guilty of intentional discharge of a firearm the jury needed to find that she intentionally discharged the shotgun. The court's instructions specifically defined "intentionally." [4] The court also explained that to find Gustafson guilty of assault in the first- or second-degree, the jury must find that she either (1) performed an act intending to cause fear in another of immediate bodily harm, or (2) intentionally inflicted or attempted to inflict bodily harm upon another. *See* Minn.Stat. § 609.02, subd. 10 (1998). The trial court did not give the jury instructions on the defenses of accident or self-defense. Gustafson did not

1. Minn.Stat. § 609.66, subd. 1a(a)(2) (1998) (stating that it is a felony to "intentionally discharge[] a firearm under circumstances that endanger the safety of another"). In pretrial proceedings, the trial court, prosecutor, and defense counsel agreed for unknown reasons to identify this charge as "reckless discharge of a firearm" at trial even though recklessness is not an element of the crime. We refer to this charge as intentional discharge of a firearm here.

2. Minn.Stat. § 609.222, subd. 2 (1998) ("Whoever assaults another with a dangerous weapon and inflicts substantial bodily harm may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.")

3. Minn.Stat. § 609.221, subd. 1 (1998) ("Whoever assaults another and inflicts great bodily harm may be sentenced to imprison-

ment for not more than 20 years or to payment of a fine of not more than $30,000, or both.")

4. The court's instructions provided:

Intentionally means that the actor either had a purpose to do the thing or to cause the result specified, or believes that her act, if successful, will cause that result. In addition, the actor must have knowledge of those facts which are necessary to make her conduct criminal. Intent is something that exists in a person's mind. It is seldom, if ever, that a person's intent can be proven by direct evidence. The intent may be inferred by the nature of the acts, what the defendant did, what the defendant said, and how the defendant acted.

request those instructions or object to the instructions given by the trial court.

After deliberation, the jury found Gustafson not guilty of intentional discharge of a firearm, but guilty of first- and second-degree assault. The trial court sentenced Gustafson to the presumptive sentence of 81 months for first-degree assault. Gustafson appealed to the court of appeals, seeking a new trial on the grounds that the jury should have been instructed on self-defense and accident even though she did not request such instructions or object to the instructions given by the trial court. *See State v. Gustafson*, No. CX–98–1465, 1999 WL 308621, at *1 (Minn.App. May 18, 1999). Gustafson also sought a new trial for ineffective assistance of counsel because her defense attorney failed to request those instructions. *See id.* at *4. Further, Gustafson claimed that the trial court erred by not exercising discretion in sentencing. *See id.*

The court of appeals affirmed the conviction and sentence in a 2–1 opinion. *See id.* at *5. The court of appeals held that the trial court's failure to instruct the jury on self-defense was not error because there was no evidence in the record that Gustafson had reasonable grounds to believe she needed to use force to prevent an assault against her person. *See id.* at *2. Citing to *State v. Boitnott*, 443 N.W.2d 527, 533 (Minn.1989), the court further held that "[b]ecause the trial court correctly instructed the jury on intent, it did not err by not giving an accident instruction." *Gustafson*, 1999 WL 308621, at *3. Finally, the court of appeals denied Gustafson's ineffective assistance of counsel claim and affirmed her sentence without modification. *See id.* at *4–5.

In contrast to the majority opinion, the dissent focused on the not guilty verdict on the count of intentional discharge of a firearm. *See id.* at *5 (Davies, J., dissenting). The dissent explained that assault requires an intentional act—either an intent to cause fear or an intent to inflict harm. *See id.* The dissent then reasoned

that because the jury, by its not guilty verdict for intentional discharge of a firearm, determined that Gustafson did not fire the gun intentionally, "the only intentional act that could constitute the predicate assault is that appellant picked up and brandished the shotgun." *Id.* If Gustafson's intentional act of picking up and brandishing the shotgun was reasonable self-defense, then Gustafson was not guilty of assault. *See id.* Therefore, the dissent concluded, because the jury might have found that "brandishing the gun was not an excessive use of force in light of appellant's reasonable apprehensions," the failure to instruct on self-defense was a "fundamental error" requiring reversal. *Id.* at *6.

Gustafson petitioned this court for review on the grounds that she is entitled to a new trial because the trial court should have instructed the jury on self-defense and accident, and that she received ineffective assistance of counsel because her defense attorney did not request such instructions.

## I.

■ Gustafson first requests a new trial on the grounds that the trial court should have given self-defense and accident instructions to the jury, or more particularly, a self-defense instruction modified to embody accident. However, Gustafson did not submit a self-defense, accident, or combined self-defense/accident instruction to the trial court, and did not object to the court's failure to include these instructions. "The general rule is that if defense counsel fails to object to error at trial, the defendant * * * is deemed to have forfeited his right to have this court consider that error on appeal." *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983).

■ However, even when there is no objection to jury instructions at trial, this court has the discretion to consider on appeal whether there was plain error affecting substantial rights. *See State v.*

*Griller,* 583 N.W.2d 736, 740 (Minn.1998); Minn. R.Crim. P. 31.02. The three-prong test for plain error requires

> that before an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings.

*Griller,* 583 N.W.2d at 740 (citations omitted). Thus, we must decide whether it was error for the trial court not to sua sponte instruct the jury on accident, self-defense, or some combination of these defenses.

First we address Gustafson's claim of error as to the failure to instruct on her accident defense. We have held that the failure to give an accident instruction is not error if the trial court's instructions adequately inform the jury that a finding of intent is a prerequisite to a finding of guilt, and the arguments of the prosecutor and defense counsel further explain this to the jury. *See State v. Stapek,* 315 N.W.2d 603, 604 (Minn.1982); *see also State v. Schluter,* 281 N.W.2d 174, 177 (Minn.1979). For example, in *Schluter,* the trial "court made it very clear that the jury could not convict defendant of either second-degree murder or first-degree manslaughter unless the jury was convinced defendant intentionally killed [the victim]." *Schluter,* 281 N.W.2d at 177. In addition, the prosecutor stated at trial "that the jury could not find defendant guilty of either second-degree murder or first-degree manslaughter if it believed defendant's claim that the gun discharged accidentally." *Id.*

Similarly, at Gustafson's trial, the court instructed the jury that each of the charged crimes had an intent requirement, and defined "intentionally." In closing arguments, the defense argued that the shooting was an accident, emphasizing that the weapon was old and dangerous, and

that Gustafson was under the influence of alcohol. In addition, as in *Schluter,* the state referred to the defense of accident repeatedly in closing arguments, conceding that one defense to the charges was that the gun went off by accident. The state told the jury that the question they had to answer was whether there was an assault or an accident.

Even so, Gustafson directs our attention to *State v. Crisler,* 285 N.W.2d 679, 682 (Minn.1979), where this court concluded that a trial court's instructions were deficient when "they did not adequately explain the defense of accidental death." In *Crisler,* the defendant's theory of the case was that he pulled out a gun in self-defense, and then a friend hit his hand causing the gun to fire. *See id.* at 680. As part of the self-defense instruction, "the trial court stated: 'If [the victim] was accidentally killed in the lawful use of force, then, of course, the defendant would not be guilty of any homicide.'" *Id.* at 682. This was the only reference to accidental death in the instructions, and as here, defense counsel did not request an accidental death instruction or object to the court's instructions. *See id.* at 682–83.

We are not persuaded that *Crisler* mandates a new trial here. In *Crisler* we remanded the case for a new trial on other grounds, and then added in dicta that upon retrial the defendant was "entitled to a more complete instruction on the effect of a finding that the shooting was accidental." *Id.* at 683. Importantly, in *Crisler* the defendant was found guilty of second-degree murder, *see id.* at 680, while here Gustafson was acquitted of intentional discharge of a firearm. Therefore, we conclude that the intent instructions, together with the closing arguments, made the jury aware that accident was a defense, and hold that the trial court did not err when it failed to give the jury an accident instruction.

Next, Gustafson argues that there was sufficient evidence in the record to

support a claim of self-defense, and that the trial court erred in failing to instruct the jury accordingly. In support of her claim that the jury should have been instructed on self-defense, Gustafson points to the following evidence in the record: (1) witnesses testified to hearing Peterson yelling obscenities while pounding on the door handle and then eventually breaking the handle and gaining entry to the cabin; (2) on the 911 tape introduced at trial Gustafson is heard telling the dispatcher that she thought "he" was "breaking in"; and (3) Gustafson told police at the scene that she reacted as she had been instructed by her husband when confronted by the sounds of an intruder.

While this evidence suggests that Gustafson could have argued self-defense to the jury as a defense against the charges, we disagree that the trial court should have instructed the jury, sua sponte, on self-defense. First, this is a case where the defendant not only failed to request a self-defense instruction, but also failed to object to the trial court's failure to give such an instruction. Moreover, Gustafson did not argue self-defense at trial, or otherwise suggest a reliance on self-defense in questions to witnesses.

■ Critical to our analysis is the fact that self-defense is an affirmative defense, requiring that the defendant give notice to the state of an intent to rely on self-defense. *See* Minn. R.Crim. P. 9.02, subd. 1(3)(a) ("The defendant shall inform the prosecuting attorney in writing of any defense, other than that of not guilty, on which the defendant intends to rely at the trial, including but not limited to the defense of self-defense * * * ."). Gustafson made no claim on appeal that defense counsel notified the prosecutor in writing of an intent to rely on the defense of self-defense, and the record before us does not indicate otherwise. Thus, while the trial court has the "ultimate responsibility to ensure that all essential instructions are given" under the law, *see State v. Leinweber*, 303 Minn. 414, 421, 228 N.W.2d 120,

125 (1975), that responsibility does not require the court to instruct the jury, sua sponte, on the affirmative defense of self-defense when it was not raised, argued, or requested. Therefore, we conclude that under these particular facts the trial court did not err in failing to give the jury a self-defense instruction.

As the trial court did not err by failing to instruct the jury sua sponte on accident or self-defense, it follows that the trial court did not plainly err by failing to give the jury a self-defense instruction modified to include accident. Accordingly, we hold that Gustafson is not entitled to a new trial on these grounds.

## II.

■ Gustafson also requests a new trial because she claims she received ineffective assistance of counsel. The two-prong test for reversing a conviction for ineffective assistance of counsel requires that the defendant: (1) show defense counsel's performance was deficient, and then (2) show that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *See State v. Voorhees*, 596 N.W.2d 241, 255 (Minn.1999). To act within an objective standard of reasonableness, an attorney must provide his or her client with the representation that an attorney "exercising the customary skills and diligence * * * [of a] reasonably competent attorney would perform under similar circumstances." *Id.* "There is a strong presumption that a counsel's performance falls within the wide range of 'reasonable professional assistance.'" *State v. Jones*, 392 N.W.2d 224, 236 (Minn.1986).

Gustafson argues that her attorney's assistance was ineffective because he failed to ensure that the jury was adequately instructed as to the defense of accident, and failed to argue self-defense. She contends that accident was not a defense to

the assault charges, only the charge of intentional discharge of a firearm. Assault is defined as either intentionally causing *fear* or intentionally inflicting *harm* upon another. *See* Minn.Stat. § 609.02, subd. 10 (1998). In essence, Gustafson claims that in light of her acquittal of the charge of intentional discharge of a firearm, the jury could not have found that she intended to inflict harm. In her view, the only way the jury could have found her guilty of assault was to find that she intended to cause fear, such as by brandishing the shotgun. Gustafson argues that this conduct could not be excused or justified by accident because one does not accidentally pick up and hold a shotgun. Instead, Gustafson contends that brandishing the shotgun was a reasonable use of force in self-defense. Thus, she claims that her attorney's failure to argue self-defense constituted deficient professional assistance because it left her without a defense to the assault charges.

■ Generally, an ineffective assistance of counsel claim should be raised in a postconviction petition for relief, rather than on direct appeal. *See Robinson v. State,* 567 N.W.2d 491, 494 & n. 3 (Minn. 1997); *Black v. State,* 560 N.W.2d 83, 85 n. 1 (Minn.1997). A postconviction hearing provides the court with "additional facts to explain the attorney's decisions," so as to properly consider whether a defense counsel's performance was deficient.*Black,* 560 N.W.2d at 85 n. 1. Gustafson argues that here, however, the record provides sufficient grounds for a determination of ineffective assistance of counsel because it clearly shows that she was left without a defense to the assault charges. We disagree. While it is arguable that Gustafson may have been left without a defense against some of the charged crimes, the record before us is devoid of the information needed to explain the attorney's decisions. Under these facts, any conclusions reached by this court as to whether Gustafson's attorney's assistance was deficient would be pure speculation on our part.

Therefore, while we decline to reach the merits of this issue, Gustafson's right to pursue an ineffective assistance of counsel claim in a petition for postconviction relief is preserved. Accordingly, we vacate that part of the court of appeals decision that is inconsistent with this holding.

Affirmed.