*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1452**

State of Minnesota,
Respondent,

vs.

Daniel Joseph Eggermont,
Appellant.

**Filed June 20, 2016
Affirmed
Larkin, Judge**

Lyon County District Court
File No. 42-CR-15-271

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Renée Bergeron, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Kirk, Judge; and Toussaint, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of third-degree assault, arguing that the evidence is insufficient to sustain his conviction, the district court erred by instructing the jury regarding revival of an aggressor's right of self-defense, the prosecutor engaged in misconduct during closing arguments, and his trial counsel was ineffective. We affirm, without addressing all of appellant's ineffective-assistance of counsel claims.

**FACTS**

Respondent State of Minnesota charged appellant Daniel Joseph Eggermont with second-degree assault, third-degree assault, fifth-degree assault, and disorderly conduct based on an incident in which he repeatedly hit his neighbor T.T. in the head with a flashlight. The case was tried to a jury.

At trial, T.T. testified that on the evening of March 8, 2015, he was at home watching television. At about 9:25 p.m., his poodle growled, indicating that something was outside. T.T. looked outside and saw an individual with a flashlight standing in front of a neighbor's house, looking into the house through a screen door. T.T. was concerned because there had been burglaries in the neighborhood in the past and his mother heard somebody knock on their living-room window the night before. T.T. walked outside and saw the individual with the flashlight staggering up his driveway and into his yard. T.T. yelled, "Hey!" The individual stopped, looked at T.T., and did not say anything. T.T. asked, "Who are you?" The individual looked at T.T., paused, and said "Eggermont."

Although T.T. knew that the Eggermont family lived down the street, he did not recognize the individual with the flashlight.

T.T. described what happened next as follows:

> [W]hen I said . . . "Who are you?" and he said, "Eggermont." And, uh, I said, "Get off my property." And I pushed him. Well, when I said, "Get off my property," uh, he had the light and he had it outwards like he was going to swing it up possibly. I was worried about that, but . . . I wanted him off the property.

T.T. further described Eggermont's actions before he pushed Eggermont. T.T. testified:

> And then I said, "Get off my property." And he looked at me and—and the light came out a little ways. It wasn't up yet but it just came out and I said, "Did you hear me? Get off my property." And I pushed him. That's all I did was push.

T.T. also testified: "And then, when I said, 'Get off my property,' the light came back like this. And I was worried about it but I pushed him right here in the chest." T.T. explained that after he pushed Eggermont, Eggermont backed up, stared at him, and with a tone of entitlement said, "I'm Eggermont." T.T. pushed him a second time, and Eggermont's body hit the back of a truck parked at the curb. Eggermont said "This is my circle" and raised the flashlight into the air. T.T. testified that at that point, he had absolutely no doubt that Eggermont was going to hit him with the flashlight, so T.T. grabbed him to throw him to the ground. In response, Eggermont grabbed T.T., and they both went down. T.T. testified that they rolled and wrestled on the ground, and T.T. was able to put Eggermont in a headlock. Eggermont hit T.T. in the head with his flashlight at least seven or eight times. Blood ran down T.T.'s face and covered one eye. T.T.

3

repeatedly said, "Stop hitting me," applied a chokehold, and squeezed until Eggermont "went limp."

T.T. testified that he jumped off Eggermont and walked up the driveway to his stepfather, J.D., who was outside and had called the police. T.T. testified that Eggermont stood up and walked toward them. After T.T. told him that the police were coming, Eggermont said "Good" and walked back toward the Eggermont residence.

J.D. testified that when he got outside, T.T. was on top of Eggermont, trying to hold him down. J.D. stated that he saw Eggermont hit T.T. with the flashlight several times. J.D. called the police. J.D. said that after T.T. got off Eggermont, Eggermont got up and walked toward his house.

At trial, Eggermont claimed that he acted in self-defense. He testified that he is blind in one eye and has macular degeneration in the other, making it difficult to see at night. He testified that on the night of March 8, he was cooking potatoes and onions in an electric frying pan. He walked outside to have a cigarette and ended up in the wrong yard, because he got turned around and walked in the wrong direction. Eggermont testified that he "just got tackled like a football . . . got lifted right up off [his] feet and put down to the ground and choked; and kept getting pounded on [his] head." Eggermont testified that he reached for his flashlight and hit T.T. twice in order to get him to let go. After T.T. let go, Eggermont remained on the ground trying to catch his breath while T.T. was sitting nearby, asking, "How come I'm bleeding?" Eggermont testified that it occurred to him that his food was still cooking, so he walked home to unplug his electric frying pan.

4

The jury found Eggermont not guilty of second-degree assault but guilty of the remaining counts. The district court imposed a stayed 18-month prison sentence on the third-degree-assault offense and placed Eggermont on probation. Eggermont appeals.

**D E C I S I O N**

**I.**

Eggermont contends that the evidence is insufficient to sustain his conviction of third-degree assault. When considering a claim of insufficient evidence, this court carefully analyzes the record to determine whether the evidence, viewed in the light most favorable to the conviction, was sufficient to allow the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). Because a jury is in the best position to evaluate the credibility of witnesses and weigh evidence, we give a jury verdict "due deference." *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998). We assume the jury was persuaded by the evidence supporting the conviction, especially "where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

"Whoever assaults another and inflicts substantial bodily harm" is guilty of third-degree assault. Minn. Stat. § 609.223, subd. 1 (2014). Eggermont does not argue that the

5

state failed to prove the elements of third-degree assault. Instead, he argues that the state failed to prove beyond a reasonable doubt that he did not act in self-defense.

> A valid claim of self-defense requires the existence of four elements: (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger. Although the defendant must come forward with evidence to support his claim, it is the State that bears the ultimate burden of disproving self-defense. To meet its burden, however, the State need only disprove beyond a reasonable doubt at least one of the elements of self-defense.

*State v. Radke*, 821 N.W.2d 316, 324 (Minn. 2012) (citations and footnote omitted).

The state argues that it disproved all of the elements of self-defense beyond a reasonable doubt. As to the absence of aggression or provocation on the part of Eggermont, the state's argument is persuasive. The supreme court has said, in the context of interpreting a jury instruction regarding revival of an aggressor's right of self-defense, that a defendant is the initial aggressor if he begins or induces the assault through conduct that is more than conversation. *State v. Carridine*, 812 N.W.2d 130, 145 (Minn. 2012).

Here, T.T. testified that he observed Eggermont peering into a neighbor's house at night. T.T. testified that Eggermont approached him on his property and that he "had the light and he had it outwards like he was going to swing it up possibly." T.T. testified that the light "came out a little ways" and that "[i]t wasn't up yet but it just came out." T.T. also testified that "the light came back like this" and that he "was worried about it." When we view T.T.'s testimony in the light most favorable to the verdict, as we must, it establishes that Eggermont made a motion with the flashlight that caused T.T. concern and

6

provoked T.T.'s response. *See Webb*, 440 N.W.2d at 430 (stating that the reviewing court views the evidence in the light most favorable to the conviction). Eggermont notes that according to T.T.'s own testimony, "T.T. told [him] to leave simultaneously with a violent two-handed shove that pushed [him] back three to four feet." But even if T.T.'s response was excessive, Minnesota courts do not "focus[] on the legal justification of a victim's response to the aggressor's acts" when considering whether a defendant has forfeited self-defense by provoking the assault. *Carridine*, 812 N.W.2d at 145 (quotation omitted).

Because the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that Eggermont was the initial aggressor and provoked the incident, the evidence is sufficient to sustain its verdict. And because we conclude that the state met its burden to disprove at least one of the elements of self-defense, we do not address the state's arguments regarding the remaining elements.

**II.**

Eggermont contends that the district court erred by instructing the jury regarding revival of an aggressor's right of self-defense under 10 *Minnesota Practice*, CRIMJIG 7.07 (Supp. 2014). Over Eggermont's objection, the district court instructed the jury as follows:

> If the defendant began or induced the assault that led to the necessity of using force in the defendant's own defense, the right to stand the defendant's ground, and thus defend himself, is not immediately available to him. Instead, the defendant must first have declined to carry on the assault and have honestly tried to escape from it, and must clearly and fairly have informed the adversary of a desire for peace and of abandonment of the assault. Only after the defendant has done

7

that will the law justify the defendant in thereafter standing his ground and using force against the other person.

A district court has "considerable latitude" in the selection of language for jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001). We review a district court's jury instructions for an abuse of discretion. *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011).

Eggermont argues that "[t]he instruction was given in error because it was not supported by the evidence." It is within the district court's discretion to instruct the jury regarding revival of an aggressor's right of self-defense, pursuant to CRIMJIG 7.07, when there is substantial evidence in the record that the defendant was the initial aggressor. *Carridine*, 812 N.W.2d at 145. As discussed above, the evidence presented by the state was sufficient to allow a jury to find that Eggermont was the initial aggressor. We therefore do not discern error in the district court's decision to give the instruction.

Eggermont argues that the "current version of CRIMJIG 7.07 misstates the law as applied to the facts of this case and also conflicts with Minn. Stat. § 609.06, the authorized use of force statute," because he "did nothing culpable or blameworthy before he was shoved, tackled and placed in a choke hold by T.T." Eggermont relies on the dissenting opinion in *State v. Edwards*, which identifies a "flaw in CRIMJIG 7.07" in "that it does not require a finding that the defendant was in some way culpable in beginning the 'incident.'"

8

717 N.W.2d 405, 416 (Minn. 2006) (Hanson, J., dissenting). But Eggermont does not cite binding authority to support his position, and the supreme court has twice upheld a district court's use of CRIMJIG 7.07. *See Carridine*, 812 N.W.2d at 145; *Edwards*, 717 N.W.2d at 411-14 (majority opinion). In sum, Eggermont has not demonstrated that the district court abused its discretion in instructing the jury pursuant to CRIMJIG 7.07.

### III.

Eggermont contends that the prosecutor engaged in prejudicial misconduct during his closing and rebuttal arguments by misstating evidence, referring to matters not in evidence, and shifting the burden of proof on self-defense. Eggermont did not object to the alleged misconduct.

A defendant who fails to object ordinarily forfeits the right to appellate review. *State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984). However, this court has discretion to review unobjected-to prosecutorial misconduct if plain error is established. Minn. R. Crim. P. 31.02; *State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006). To establish plain error based on a claim of prosecutorial misconduct, the prosecutor's unobjected-to argument must be erroneous, the error must be plain, and the error must affect the appellant's substantial rights. *Ramey*, 721 N.W.2d at 302 (citing *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)). The burden rests with the defendant to demonstrate that plain error has occurred. *Id*. If plain error is established, the burden shifts to the state to demonstrate that the plain error did not affect the defendant's substantial rights. *Id*.

Eggermont argues that the prosecutor plainly erred by intentionally misstating evidence and arguing facts not in evidence. "A prosecutor commits misconduct by

9

intentionally misstating evidence." *State v. Mayhorn*, 720 N.W.2d 776, 788 (Minn. 2006). But "[a] prosecutor may draw reasonable inferences from the evidence produced at trial." *State v. Ashby*, 567 N.W.2d 21, 28 (Minn. 1997).

Eggermont assigns error to the following statement from the prosecutor during closing argument: "And then what did the defendant do? He left. What did he get rid of? He left the flashlight at his home and then he travelled back. And what did he tell—what did he tell law enforcement? That the flashlight was in the yard." Eggermont contends that the prosecutor intentionally misstated the evidence, relying on the testimony of one of the officers that Eggermont pointed to the flashlight on his kitchen counter and offered it to the officer. However, another officer testified that Eggermont told him the flashlight was "somewhere over there," while pointing to a neighbor's yard. Because the prosecutor's statement was supported by the evidence, it was not erroneous.

Eggermont argues that it was misconduct for the prosecutor to draw attention to his lack of injuries and to question why he would walk toward T.T. after the incident if he feared T.T. Because this inquiry is supported by evidence in the record, the prosecutor did not err. *See State v. Outlaw*, 748 N.W.2d 349, 358 (Minn. App. 2008) (stating that "a prosecutor is free to make legitimate arguments on the basis of all proper inferences from the evidence introduced"), *review denied* (Minn. July 15, 2008).

Eggermont also argues that it was misconduct for the prosecutor to argue that he made inconsistent statements about what he was doing before the assault: specifically, that he said he was "getting ready for bed" and also that he was "disoriented or sleepwalking." But Eggermont testified that he had been "getting ready for bed" and acknowledged on

10

cross-examination that he was kind of disoriented when he walked down the street before the incident. Once again, the prosecutor's remarks are supported by the record and not erroneous.

Eggermont argues that it was misconduct for the prosecutor to state that T.T. gave him a "gentle push" after asking him to leave the property and that T.T. "softly pushed" him. The state counters that it is reasonable to infer that the pushes were gentle because Eggermont did not fall over or retreat. "[A] prosecutor is free to make legitimate arguments on the basis of all proper inferences from the evidence introduced." *Id.* As with Eggermont's other contentions, he has not demonstrated that the prosecutor plainly erred by describing the pushes as gentle or soft. *See Ramey*, 721 N.W.2d at 302 ("An error is plain if it was clear or obvious") (quotations omitted).

Lastly, Eggermont argues that the prosecutor's rebuttal argument inappropriately shifted the burden of proof on his self-defense claim. "Prosecutors improperly shift the burden of proof when they imply that a defendant has the burden of proving his innocence. A prosecutor's misstatement of the burden of proof is highly improper and constitutes misconduct." *State v. Martin*, 773 N.W.2d 89, 105 (Minn. 2009) (citation and quotation omitted).

Eggermont asserts that the following rebuttal argument was improper:

> We are here today not about—it is not before you to decide what you would have done if you were in [T.T.'s] position or what [T.T.] should have done with hindsight being 20/20. Instead, your sole task is to look at what Mr. Eggermont did and what—whether or not he was defending himself from an assault or an attack.

11

The prosecutor's remarks likely were a response to Eggermont's argument that T.T. "could have stayed in the safety of his home and he could have called the police," and that T.T. chose not to "go back in the house and call the police." It is not clear or obvious that the prosecutor's remarks improperly shifted the burden of proof to Eggermont. In sum, Eggermont has not established plain error in the form of prosecutorial misconduct. He therefore is not entitled to relief under the plain-error standard.

**IV.**

Eggermont contends that he received ineffective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984).

Eggermont argues that his trial counsel was ineffective because she did not "strenuously object to the state's requested instruction on the revival of an aggressor's right to self-defense and [did not] object to the prosecutor's misrepresentation of facts and the shifting of the burden of proof . . . during closing argument." But Eggermont's trial counsel objected to the revival instruction, and Eggermont has not demonstrated that the prosecutor misrepresented facts or shifted the burden of proof such that trial counsel's failure to object fell below an objective standard of reasonableness.

Eggermont also argues that his trial counsel was ineffective because she failed to request a competency evaluation under Minn. R. Crim. P. 20 and failed to present evidence regarding Eggermont's disabilities at trial. "Generally, an ineffective assistance of counsel

12

claim should be raised in a postconviction petition for relief, rather than on direct appeal."
*State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000). The reason for this general preference is that a "postconviction hearing provides the court with additional facts to explain the attorney's decisions, so as to properly consider whether a defense counsel's performance was deficient." *Id.* (quotation omitted). Without those additional facts, "any conclusions reached by [an appellate] court as to whether [a defendant's] attorney's assistance was deficient would be pure speculation." *Id.* But if the trial record is sufficiently developed such that an ineffectiveness claim can be decided based on that record, an appellate court may consider the claim on direct appeal. *Voorhees v. State*, 627 N.W.2d 642, 649 (Minn. 2001).

The record is not sufficiently developed to decide Eggermont's ineffective-assistance claims that are based on his competency and his disabilities. For example, the record does not explain the extent of Eggermont's disabilities, whether his trial counsel investigated or should have investigated those disabilities, or whether his trial counsel made objectively reasonable decisions regarding how to use the disabilities in Eggermont's defense. Although we will not consider the merits of Eggermont's competency- and disability-based ineffective-assistance claims, we preserve his right to pursue those claims in a postconviction proceeding under the requirements and standards prescribed by law. *See State v. Jackson*, 726 N.W.2d 454, 463 (Minn. 2007) ("Jackson's claims about his counsel's investigation and witness contacts require consideration of facts not in the

13

trial record.  Accordingly, we deny those claims without prejudice to Jackson's right to raise them in a postconviction proceeding.").

**Affirmed.**