*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1928**

State of Minnesota,
Respondent,

vs.

Andrew Joseph Casserly,
Appellant.

**Filed November 17, 2025**
**Affirmed**
**Bond, Judge**

Stearns County District Court
File No. 73-CR-23-2453

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, River D. Thelen, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bond, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**BOND**, Judge

In this direct appeal from the judgment of conviction for first-degree and aggravated first-degree controlled-substance crimes and for unlawful possession of a firearm, appellant argues that the evidence is insufficient to prove that he unlawfully possessed

methamphetamine. Appellant raises additional issues in his pro se supplemental brief. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Andrew Joseph Casserly with aggravated controlled-substance crime in the first degree—firearm possession in violation of Minn. Stat. § 152.021, subd. 2b(1) (2022), first-degree possession of a controlled substance in violation of Minn. Stat. § 152.021, subd. 2(a)(1) (2022), unlawful firearm possession in violation of Minn. Stat. § 624.173, subd. 1(2) (2022), and fleeing police in a motor vehicle in violation of Minn. Stat. § 609.487, subd. 3 (2022). Casserly waived his right to a jury trial and the case proceeded to a bench trial, after which the district court issued a written order setting forth the following findings of fact.

In March 2023, undercover investigators from the Central Minnesota Violent Offender Task Force were surveilling a suspected drug dealer in St. Cloud. The investigators observed the suspected drug dealer's car pull alongside a Dodge Charger in a carwash parking lot. The suspected drug dealer got into the Charger and spoke with the driver, who police did not know but later identified as Casserly. Investigators observed the suspected drug dealer go back to his own car, then return to the Charger and engage in what investigators believed was a likely hand-to-hand drug transaction with Casserly. The suspected drug dealer and Casserly drove off in their respective vehicles.[1] Investigators did not see anyone in the Charger other than Casserly.

---

[1] The state did not present evidence that Casserly was the registered owner of the Charger. Casserly testified that the Charger was a rental that several people used.

2

A St. Cloud police officer on patrol in a marked squad car responded to the investigators' call for assistance and followed the Charger for a few blocks. After observing the Charger fail to properly signal a lane change, the officer turned on his emergency lights to initiate a traffic stop. The Charger sped away, reaching speeds up to 70 miles per hour as it fled. After running a red light, the Charger was struck by an oncoming vehicle and crashed.

The officer observed Casserly exit the passenger side of the Charger and flee on foot, shedding his black winter jacket and other items as he ran. No one else was in the Charger. Police later located and arrested Casserly.

On the sidewalk at the scene of the crash, police found a firearm, holster, and a black winter jacket with ammunition in a pocket. Casserly could not be excluded from being a contributor to a DNA mixture found on the firearm's grip. There were bags of white powder and crystal-like materials located in the Charger's center console, trunk, and backseat. Collectively, the bags weighed nearly 2,270 grams, of which 111 grams tested positive for methamphetamine.[2] A cell phone in the Charger contained text messages identifying Casserly as the phone's owner. Many of the text messages appeared to reference drug transactions and others were with the suspected drug dealer.

Casserly testified that, on the day of the offense, another man picked him up and drove him to St. Cloud. Casserly claimed the other man met with someone who may have

---

[2] The Minnesota Bureau of Criminal Apprehension (BCA) maintains a policy that it will only test a substance up to a certain threshold when the substances are visually similar. In this case, the BCA tested the substances up to the 100-gram threshold for first-degree aggravated controlled-substance crime, Minn. Stat. § 152.021, subd. 2b(1).

been the suspected drug dealer while Casserly went into the carwash. Casserly told the other man that he had another ride and got out of the Charger. Casserly testified that he was not in the Charger when it crashed, did not flee the scene of the accident, and did not have a gun on his person that day. While Casserly acknowledged that he used methamphetamine and was under the influence at the time of the offense, he denied having any methamphetamine in the Charger.

The district court acquitted Casserly of fleeing a peace officer and found him guilty of the remaining three counts.[3] The district court sentenced Casserly to 240 months in prison for first-degree aggravated controlled-substance crime and a concurrent 71 months for unlawful firearm possession.[4]

Casserly appeals.

---

[3] The district court found that the state failed to prove that the St. Cloud police officer who initiated the traffic stop and chased the Charger as it sped away was a "licensed peace officer" as required by Minn. Stat. § 609.487, subd. 3.

[4] The 240-month sentence for first-degree aggravated controlled-substance crime was an upward durational departure under Minn. Stat. § 609.1095, subd. 3 (2022) (requiring a district court to impose a mandatory sentence for dangerous offenders who commit a third violent felony). The district court did not adjudicate or sentence Casserly on the first-degree controlled-substance count.

**DECISION**

**I.**   **The evidence is sufficient to prove beyond a reasonable doubt that Casserly's possession of methamphetamine was unlawful.**

Casserly argues that his conviction should be reversed because the state's evidence fails to prove beyond a reasonable doubt that his possession of the methamphetamine in the Charger was unlawful.[5]

Due process requires the state to prove every element of a charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *State v. Merrill*, 428 N.W.2d 361, 366 (Minn. 1988); *see* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. To convict Casserly of the controlled-substance offenses, the state was required to prove that he "unlawfully possess[ed]" methamphetamine. Minn. Stat. § 152.021, subd. 2(a)(1) (providing that a person commits first-degree controlled-substance crime if the person "unlawfully possess[ed] one or more mixtures of a total weight of 50 grams or more containing cocaine or methamphetamine"); Minn. Stat. § 152.021, subd. 2b(1) (providing that a person commits aggravated first-degree controlled-substance crime if the person "possesses 100 or more grams [of a mixture containing cocaine or methamphetamine]" and possessed a firearm). For purposes of chapter 152, "unlawfully" means "selling or possessing a controlled substance in a manner not authorized by law." Minn. Stat. § 152.01, subd. 20 (2022). Because it is an element of the offense, the state must prove beyond a reasonable doubt that a person's possession of methamphetamine was unlawful. *State v. Clarin*, 913 N.W.2d 717, 720 (Minn. App. 2018), *rev. denied* (Minn. Aug. 7, 2018).

---

[5] On appeal, Casserly does not challenge his conviction for unlawful firearm possession.

In determining whether the evidence is sufficient to support a conviction, we "carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). We view the evidence in the light most favorable to the verdict and assume the fact-finder believed the state's witnesses and disbelieved contrary evidence. *Id.* We apply the same standard of review in bench trials and in jury trials. *State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009).

At trial, the state relied on circumstantial evidence to prove that Casserly's possession of the methamphetamine in the Charger was unlawful. The parties agree that we should apply the circumstantial-evidence standard of review. *See Clarin*, 913 N.W.2d at 720 (applying circumstantial-evidence standard of review to determine whether the state proved that defendant's possession of methamphetamine was unlawful).

Under the circumstantial-evidence standard of review, we first identify the circumstances proved, "defer[ring] to the [fact-finder's] acceptance of the proof of [the] circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013) (quotation omitted). This means that "we consider only those circumstances that are consistent with the verdict." *Id.* at 599. Next, we independently determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, giving "no deference to the fact finder's choice between reasonable inferences." *Id.* (quotation omitted). "Circumstantial evidence must form a complete chain that, in view

6

of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted).

Importantly, when evaluating the inferences that may be drawn from the circumstances proved, "[w]e review the circumstantial evidence not as isolated facts, but as a whole." *State v. Sterling*, 834 N.W.2d 162, 175 (Minn. 2013). "The circumstantial evidence standard does not allow us to 'analyze and parse each fact' in a 'piecemeal' fashion to conclude that a hypothesis is reasonable." *State v. Colgrove*, 996 N.W.2d 145, 150 (Minn. 2023) (quoting *State v. Cox*, 884 N.W.2d 400, 415 (Minn. 2016)). And we may not set aside a verdict based on conjecture or speculation. *Id.*; *Al-Naseer*, 788 N.W.2d. at 480.

Viewing the evidence in the light most favorable to the verdict, the circumstances proved are that Casserly engaged in what appeared to be a hand-to-hand drug transaction in a Dodge Charger with a suspected drug dealer who was under police surveillance. Casserly fled from police in the Charger at a high rate of speed, eventually running a red light and crashing. Casserly was the only person in the Charger. While fleeing on foot from the crash scene, Casserly threw his jacket and a gun onto the sidewalk. Police discovered plastic bags of white powder and crystalline material in several different locations in the car, of which 111 grams was confirmed to be methamphetamine. The district court found that the methamphetamine "was substantial," "was in many different containers and in many places throughout the vehicle," and "was packaged in plastic baggies, not any container that indicated it was obtained from a medical professional or

7

other licensed distributor." In his testimony, Casserly admitted he was using methamphetamine at the time of the offense. Casserly's phone was found in the Charger and contained text messages with the suspected drug dealer and that referenced apparent drug transactions.

We next examine whether the reasonable inferences drawn from the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis of innocence. *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017). We readily conclude that it is reasonable to infer from the circumstances proved that Casserly unlawfully possessed the methamphetamine found in the Charger. *Clarin*, 913 N.W.2d at 721 (determining that there was a reasonable inference that defendant's possession of methamphetamine was unlawful because "had the methamphetamine been lawfully prescribed, it would have been in a labeled container with appellant's name on it, and in capsule or tablet form, rather than a white powder in an unlabeled clear plastic baggie"). Casserly appears to acknowledge that the circumstances proved are consistent with a reasonable inference that "the presence of methamphetamine in the vehicle was not legally permitted." But he argues that the circumstances proved are also consistent with a reasonable inference of innocence. We disagree.

Casserly's alternate inference rests on the district court's finding that Casserly's flight from the crash scene supports "a determination that [Casserly] could not have explained [that] the presence of methamphetamine in the vehicle was legally permitted." Pointing to the fact that he is ineligible to possess a firearm, Casserly argues that, while his "flight may have been consistent with the rational hypothesis that he couldn't explain the

8

drugs, it was also consistent with the rational hypothesis that he couldn't explain the revolver he had on his person." This argument is unconvincing because the relevant question is whether there is a rational hypothesis that Casserly's possession of methamphetamine was lawful, not whether there is a rational hypothesis that his flight from the crash scene was to avoid discovery of the firearm. Further, in determining the reasonableness of inferences, we must consider the circumstances proved not in isolation, but as a whole. *Colgrove*, 996 N.W.2d at 150; *Sterling*, 834 N.W.2d at 175. Even if it were reasonable to infer that Casserly fled in part because he was ineligible to possess the firearm, the circumstances proved include his interaction with the suspected drug dealer, the text messages on his phone, his admission of methamphetamine use, and the quantity, location, and packaging of the methamphetamine in the Charger.

Casserly further argues that the district court's finding that the methamphetamine "was packaged in plastic baggies, not [in] any container that indicated it was obtained from a medical professional or other licensed distributor" was improper because the state did not present evidence showing how lawfully prescribed methamphetamine is typically packaged. We rejected a similar argument in *Clarin*. There, after the defendant was removed from the back seat of a squad car, police discovered a small clear plastic bag containing a white powdery substance on the floor. *Clarin*, 913 N.W.2d at 718-19. On appeal, the defendant argued that his conviction should be reversed because the state failed to present sufficient evidence that his possession of the methamphetamine found in the squad car was unlawful. *Id.* at 719. We noted that, while methamphetamine can be legally possessed with a valid prescription, pharmacists must "distinctly label the container in

which [the] controlled substance is dispensed with the directions contained in the prescription for the use of that controlled substance." *Id.* at 721 (quoting Minn. Stat. § 152.11, subd. 1(e) (2014)). We concluded that a finder of fact "could rationally conclude that [the defendant's] possession was unlawful based on the inference that, had the methamphetamine been lawfully prescribed, it would have been in a labeled container with appellant's name on it, and in capsule or tablet form, rather than a white powder in an unlabeled clear plastic baggie." *Id.*

Here, the circumstances proved are that the methamphetamine was packaged in plastic bags, in substantial amounts, in multiple locations throughout the Charger. Like the fact-finder's reasonable inference in *Clarin*, the district court's inference that Casserly's possession was unlawful because the methamphetamine was "packaged in plastic baggies, not any container that indicated it was obtained from a medical professional or other licensed distributor" was reasonable. Indeed, the state introduced even stronger evidence in this case than was present in *Clarin*: as we have explained, in addition to the packaging evidence, Casserly engaged in what appeared to be a hand-to-hand drug transaction with a suspected drug-dealer, fled from police, admitted using methamphetamine at the time of the offense, and had text messages on his phone related to controlled-substance transactions.

In sum, Casserly does not show how the circumstances proved as a whole support a reasonable hypothesis that he lawfully possessed the methamphetamine found in the Charger. *See State v. Segura*, 2 N.W.3d 142, 158 (Minn. 2024) (concluding that "[t]he absence of evidence in the record regarding certain circumstances does not constitute a

circumstance proved from which reasonable inferences may be drawn"). We cannot overturn a jury verdict based on speculation or "mere conjecture." *See Cox*, 884 N.W.2d at 412; *Al-Naseer*, 788 N.W.2d. at 480. Viewed in their entirety, the circumstances proved are consistent with the rational hypothesis that Casserly's possession of methamphetamine was unlawful and inconsistent with any rational hypothesis other than guilt. The evidence is therefore sufficient to sustain Casserly's conviction.

## II. Casserly is not entitled to relief on the issues raised in his pro se supplemental brief.

Casserly raises several issues in a pro se supplemental brief. We conclude that none of these issues provides a basis for reversal.

First, Casserly argues that the evidence was insufficient to prove he possessed the methamphetamine found in the Charger. "Possession may be proved through evidence of actual or constructive possession." *Harris*, 895 N.W.2d at 601. Actual possession refers to "direct physical control" over an item. *State v. Barker*, 888 N.W.2d 348, 353 (Minn. App. 2016) (quotation omitted). If the state cannot prove actual possession, it may prove constructive possession in one of two ways. *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015). The state can prove constructive possession by showing that police found the item in a place that was under the defendant's exclusive control to which other people did not normally have access. *Harris*, 895 N.W.2d at 601. Alternatively, if the item was found in a place to which others did have access, the state must show a strong probability, inferable from other evidence, that "the defendant was consciously or knowingly exercising dominion and control over" the item at the time. *Id.*

11

The state's theory at trial was that Casserly constructively possessed the methamphetamine in the Charger. The district court found Casserly guilty of methamphetamine possession, determining that, while the evidence did not clearly establish that the Charger was a place under Casserly's exclusive control to which others did not normally have access, Casserly was nonetheless consciously exercising dominion and control over the methamphetamine. The district court's findings of fact include that Casserly was the only occupant of the Charger and admitted that some of the items in the Charger belonged to him. Casserly was familiar with methamphetamine and was under the influence at the time of the offense. Text messages on Casserly's phone found in the Charger "show a history of repeated, persistent references to controlled substances and controlled substance transactions." Casserly fled from the police, both in the Charger and, when it crashed, on foot. And "[t]he amount of methamphetamine found in the Charger was substantial, and it was in many different containers and in many places throughout the vehicle," including places within Casserly's reach.

Under the circumstantial-evidence standard of review,[6] the district court's factual findings are circumstances proved to which we defer. *See id.* at 600; *see also State v. Barshaw*, 879 N.W.2d 356, 358, 363 (Minn. 2016) (stating that, after a bench trial, we defer to the district court's assessment of "the credibility of the evidence" in establishing circumstances proved (quotation omitted)). These circumstances proved support a rational

---

[6] The state agrees that the circumstantial-evidence standard of review applies to Casserly's pro se challenge to the sufficiency of the evidence that he possessed the methamphetamine in the Charger.

inference that Casserly constructively possessed the methamphetamine by consciously or knowingly exercising dominion and control over it. *See State v. Smith*, 619 N.W.2d 766, 768-71 (Minn. App. 2000) (affirming conviction of constructive possession of a firearm in a car based on evidence that the firearm was in proximity to the defendant and the defendant was the sole occupant of the car), *rev. denied* (Minn. Jan. 16, 2001).

Casserly argues that there is a reasonable inference that the methamphetamine belonged to a previous driver of the Charger. Casserly also points out that a witness's description of the man who fled the Charger after it crashed did not match Casserly's appearance. But the district court rejected Casserly's testimony as not credible and found that the witness's physical description was inaccurate. Because we defer to the district court's credibility determinations, Casserly's inferences of innocence are not supported by circumstances proved. *See Barshaw*, 879 N.W.2d at 363. We conclude that the circumstances proved are consistent with the rational hypothesis that Casserly constructively possessed the methamphetamine in the Charger and inconsistent with any rational hypothesis other than guilt. Therefore, the evidence is sufficient to sustain Casserly's conviction.

Second, Casserly argues that he was deprived of the effective assistance of counsel because his trial attorney failed to call two confidential informants as witnesses, failed to investigate other witnesses near the crash scene, failed to obtain additional surveillance footage from the carwash, and failed to obtain the criminal history of the Charger's prior drivers. Casserly also asserts that his attorney had a conflict of interest because of a social relationship with a different attorney against whom Casserly had filed a complaint.

13

To prevail on an ineffective-assistance-of-counsel claim, a criminal defendant must show that "(1) his trial counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Jones*, 977 N.W.2d 177, 193 (Minn. 2022) (quotation omitted); *see also Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

Claims of ineffective assistance of counsel are typically raised in a petition for postconviction relief rather than on direct appeal. *State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000); *State v. Ellis-Strong*, 899 N.W.2d 531, 535 (Minn. App. 2017). "A postconviction hearing provides the court with additional facts to explain the attorney's decisions, so as to properly consider whether a defense counsel's performance was deficient." *Gustafson*, 610 N.W.2d at 321 (quotation omitted). An ineffective-assistance-of-counsel claim must be brought on direct appeal only if it can be resolved on the basis of the trial record alone. *Ellis-Strong*, 899 N.W.2d at 535. Appellate courts may decline to address an ineffective-assistance-of-counsel claim if the record is insufficient for appellate review. *See Gustafson*, 610 N.W.2d at 321; *Ellis-Strong*, 899 N.W.2d at 540-41. Here, the trial record does not allow us to determine whether Casserly received ineffective assistance of counsel. Thus, we decline to consider this argument on direct appeal. *Gustafson*, 610 N.W.2d at 321.

Finally, Casserly asserts other claims, including that the police failed to interview witnesses and that his trial was unfair. We recognize a duty to accommodate pro se litigants, so long as no prejudice results. *Kasson State Bank v. Haugen*, 410 N.W.2d 392,

14

395 (Minn. App. 1987). But we have repeatedly emphasized that pro se litigants are "generally held to the same standards as attorneys and must comply with court rules." *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). Assertions in a pro se brief are forfeited if they are unsupported by argument or citation to legal authority. *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008). Factual assertions must also be supported by citations to the record. *State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003). Casserly's remaining pro se claims contain no citations to the record or to legal authority, and we discern no prejudicial error that "is obvious on mere inspection." *Bartylla*, 755 N.W.2d at 22-23 (quotation omitted). These arguments are therefore forfeited and we decline to consider them. *Id.*

**Affirmed.**