*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0587**

State of Minnesota,
Respondent,

vs.

Reginald Scott Hubbard,
Appellant.

**Filed March 4, 2024
Affirmed
Florey, Judge***

Yellow Medicine County District Court
File No. 87-CR-22-418

Keith Ellison, Attorney General, Lisa Lodin, Assistant Attorney General, St. Paul, Minnesota; and

Mark Gruenes, Yellow Medicine County Attorney, Granite Falls, Minnesota (for respondent)

Cathryn Middlebrook Chief Appellate Public Defender, Gina D. Schultz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Larson, Judge; and Florey, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FLOREY**, Judge

On appeal from his conviction of felony domestic assault–harm, appellant requests a new trial because (1) the prosecutor committed prejudicial misconduct during closing argument and (2) the district court abused its discretion by excluding relevant evidence. Appellant also raises several issues in a pro se supplemental brief. We affirm.

## FACTS

In September 2022, respondent State of Minnesota charged appellant Reginald Scott Hubbard with one count of felony domestic assault–harm in violation of Minnesota Statutes section 609.2242, subdivision 4 (2022), and one count of felony domestic assault–fear, also in violation of Minnesota Statutes section 609.2242, subdivision 4. The charges concern appellant's involvement in the assault of his girlfriend, T.E., on September 1, 2022.

***Trial proceedings***

During voir dire, appellant's counsel asked the prospective jurors about implicit and unconscious bias and then said, "To me it's clear that all of us . . . everybody in this room except for Mr. Hubbard is white. Mr. Hubbard is the only black person in the room." After the jury had been sworn in, the court instructed the jury on implicit bias and told the jury that "[n]othing the attorneys [said] during the trial, including opening and closing arguments [was] evidence."

The state called T.E. as its first witness. T.E. testified that, on the night of the incident, she was getting ready to take a shower when appellant appeared in the bathroom doorway and dragged her by her hair and arm to the bedroom. T.E. remembers appellant

yelling that she set him up, but she was unsure what he was talking about. Then appellant took an ashtray and hit T.E. in the leg. T.E. believes that appellant punched her and then put his hands around her neck. T.E.'s roommate, D.B., came into the room, removed appellant from on top of T.E. and called the police. The altercation resulted in a cut between T.E.'s eyebrows and blood on T.E.'s face and leg. The state offered into evidence a photograph showing T.E.'s leg and the ashtray.

The responding officer testified that he was advised by dispatch of a domestic disturbance at T.E.'s home. Once he arrived at the residence, he noticed bruising on T.E.'s body and a mark on her lower leg. T.E. told the officer that she was about to take a shower when appellant chased her out of the bathroom. T.E. and appellant went into her bedroom and appellant became upset and attacked her. The state offered into evidence two more photographs of T.E. that depicted bruising on her body.

Appellant testified that on September 1, he received text messages from T.E. Defense counsel showed appellant photographs of the text messages on appellant's phone and appellant testified that he recognized the messages and that they were from T.E. because her number appeared at the top of the screen. Defense counsel offered the photographs of appellant's text messages into evidence. Before the district court ruled on the exhibits, the state requested to voir dire the witness. The state asked appellant if he had photographs in front of him. Appellant responded: "No, it's my text from my phone. It's my call logs and my text message between me and [T.E.]." Appellant testified that an investigator took the photographs of his phone. And after appellant expressed some confusion, the prosecutor said, "I'm just trying to figure out where these came from."

3

Appellant responded, "Okay, well, I don't know what you're trying to ask me because for the simple fact that—I say she took the pictures of my phone, my call logs—and my texts." The state made no objection to the exhibits and the court received both.

Appellant also testified that on September 1, he told officers how long he had been downstairs in the home: "I told the officer exactly how long I had been down there. Like, I said—I told him—when I told him that I got hit on the head with a lighter or something. I told him that I had been down there like two hours." When defense counsel asked for clarification, appellant stated that "she threw" something at his head. Appellant also noted that the object left a mark.

Defense counsel then called the jailer who was present when appellant was booked into jail. After the jailer was sworn in, the parties had a sidebar conference. The state said, "[I]t's my understanding that . . . there's not going to be an assertion of self-defense." The state continued, "It's my understanding that this witness is being called to say that upon his arrest, he noted like a little scratch or injury on Mr. Hubbard's forehead. I would submit that that's not relevant to . . . really anything here in the trial." Defense counsel responded that it would be relevant only to credibility: "[I]t's [T.E.]'s credibility against Mr. Hubbard's. Mr. Hubbard testified that he had been struck by something thrown at him and [the jailer] observed a mark at the approximate location." The court found that the witness's proposed testimony was not relevant and did not allow the witness to testify.

In its closing argument, the state outlined the elements of each charge and the evidence that supported each element. The state also discussed how the jury was allowed to assess appellant's credibility and that the jurors should ask themselves if appellant had

4

"a motive to lie." The state continued: "I would submit to you that he does. And just ask and consider his demeanor and way of discussing these events. Frankly, most of it was rambling nonsense." The state then discussed T.E.'s testimony. During defense counsel's closing argument, counsel discussed appellant's text messages. Defense counsel argued that the text messages indicated that T.E. was upset with appellant and suspicious of him.

In its rebuttal argument, the state encouraged the jury to be skeptical of the text messages that defense counsel introduced into evidence. The state argued that it was unreasonable to glean from the messages that T.E. would fabricate an assault on herself. And the state questioned the authenticity of the messages by suggesting, without evidence, that the messages could have been altered by appellant. Appellant did not object to the state's closing arguments. The district court again instructed the jury that the attorney's arguments and remarks are not evidence. The jury found appellant guilty of both counts. The district court adjudicated appellant guilty of count one, felony domestic assault–harm and dismissed count two, felony domestic assault–fear.

This appeal followed.

## DECISION

Appellant requests a new trial because (1) the prosecutor committed prosecutorial misconduct on two occasions during closing argument, and (2) the district court abused its discretion by excluding relevant evidence.

### I. The prosecutor did not commit prosecutorial misconduct in closing argument.

We ordinarily review an unobjected-to error under the "plain error test[,]" under which "a criminal defendant must show that (1) there was an error, (2) the error was plain,

and (3) the error affected the defendant's substantial rights." *State v. Myhre*, 875 N.W.2d 799, 804 (Minn. 2016) (citing *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)).

When a defendant does not object to alleged prosecutorial misconduct during closing arguments, "[w]e review the prosecutor's statements under a modified plain-error analysis." *State v. Davis*, 982 N.W.2d 716, 726 (Minn. 2022). "Under this approach, the defendant must establish the existence of an error that was plain . . . ." *State v. Epps*, 964 N.W.2d 419, 423 (Minn. 2021) (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). "An error is plain if it is clear or obvious, which is typically established if the error contravenes case law, a rule, or a standard of conduct." *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017) (quotation omitted).

If the defendant establishes plain error, "then the burden shifts to the State to establish that the plain error *did not* affect the defendant's substantial rights." *Epps*, 964 N.W.2d at 423 (citation omitted). "Notably, a negative answer to any one of the three parts of the plain error doctrine may end our analysis and a defendant's quest for relief." *Id.* at 423 (citing *State v. Jones*, 753 N.W.2d 677, 689 (Minn. 2008) (granting no relief for the defendant because the alleged error could not have been plain) (other citations omitted)).

### A. Prosecutor's initial closing argument

Appellant argues that the prosecutor committed misconduct by calling appellant's testimony "rambling nonsense." Specifically, appellant contends that the prosecutor "signaled to the jury that it could disregard anything about [appellant's] testimony that did not immediately make sense to them."

6

"When assessing alleged prosecutorial misconduct during a closing argument, we look to the closing argument as a whole, rather than to selected phrases and remarks." *State v. Graham*, 764 N.W.2d 340, 356 (Minn. 2009) (quotation omitted). It is "improper for a prosecutor to give her own opinion about the credibility of a witness in closing argument." *State v. Mayhorn*, 720 N.W.2d 776, 786 (Minn. 2006). It is not misconduct, however, "for the state to analyze the evidence and argue that particular witnesses were or were not credible." *State v. Wright*, 719 N.W.2d 910, 918-19 (Minn. 2006).

Here, the prosecutor told the jurors that they were allowed to assess appellant's credibility because he took the stand and that they should ask themselves if appellant had a motive to lie. The prosecutor continued: "I would submit to you that he does. And just ask and consider his demeanor and way of discussing these events. Frankly, most of it was rambling nonsense."

Appellant contends that the prosecutor and judge should have been aware of the "effect such disparaging comments could have in the context of this particular courtroom[,]" i.e., everyone in the courtroom was white except for appellant. Appellant points out that he clearly comes from a different background than the jury, and therefore the jury had to listen carefully to his testimony to ensure that they did not miss anything due to cultural differences. Appellant argues that instead of being mindful of this, the prosecutor told the jurors that they could ignore whatever they did not immediately understand. Appellant's argument is unpersuasive.

First, the prosecutor did not tell the jurors that they should ignore anything about appellant's testimony they did not understand. The prosecutor told the jury to think about

7

whether appellant had a motive to lie. The prosecutor offered that appellant did have a motive to lie and noted appellant's testimony as support. Second, appellant fails to cite any legal authority in which this court or the supreme court have found error in similar situations. And third, the court instructed the jury on implicit bias, and we assume that the jury followed the district court's instructions. *See State v. Vang*, 774 N.W.2d 566, 578 (Minn. 2009).

And even if the prosecutor interjected their personal opinion about the appellant's credibility, plain error does not exist. In *State v. Powers*, the prosecutor said during closing argument, "Well I'm not sure I have the energy to dignify and talk to you about Vernon Powers' testimony in here. I just don't think I can do that, and I'm not going to." 654 N.W.2d 667, 678-79 (Minn. 2003). The supreme court concluded that it did seem like the prosecutor expressed an opinion on the defendant's credibility but held that the statement did not amount to misconduct because it was only two sentences in an argument that "amounted to over 20 transcribed pages." *Id.* at 679. In *State v. Starkey*, 516 N.W.2d 918, 928 (Minn. 1994), the prosecutor said during closing, "I mean, I find that impossible to believe that, if that is in fact the fact." The court held that "[a]lthough the prosecutor's statement was inappropriate, [the court did] not believe it was prejudicial." *Id.*

Here, the prosecutor did not go as far as saying that appellant's testimony was a lie. Nor did the prosecutor say that appellant's testimony was impossible to believe. And even though the prosecutor's closing argument was not 20 transcribed pages, the prosecutor's statement was one sentence in six transcribed pages and immediately following the

prosecutor's statement, the prosecutor discussed T.E.'s testimony. Overall, when taking the prosecutor's argument as a whole, we conclude that no plain error exists.

Even if we were to assume without deciding that the prosecutor's argument was plain error, any such error did not affect the appellant's substantial rights.

If a defendant establishes plain error, the burden shifts to the state to show that "the plain error *did not* affect the defendant's substantial rights." *Epps*, 964 N.W.2d at 423 (citation omitted). To meet this burden, the state must show that there is "no reasonable likelihood" that the misconduct significantly affected the verdict. *State v. Dye*, 871 N.W.2d 916, 925 (Minn. App. 2015). Relevant factors include "'the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions.'" *Id.* (quoting *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007)).

As to the prosecutor's statement in their initial closing argument, there is no reasonable likelihood that the misconduct significantly affected the verdict. First, there was strong evidence of appellant's guilt. Appellant's testimony places him at the home at the time of the incident. The responding officer testified that he was advised by dispatch of a domestic disturbance at T.E.'s home. And after he arrived at the residence and spoke with T.E., he noticed bruising on T.E.'s body and a mark on her lower leg. The officer testified that T.E. told him that appellant got upset and attacked her. T.E. testified that on the night of the incident she remembers that appellant was yelling that she set him up, and then appellant took an ashtray and hit her in the leg. Moreover, through both the testimony of

T.E. and the officer, the state offered several photographs of T.E.'s injuries and a photograph of the ashtray to corroborate their testimony.

Second, the prosecutor's suggestion was not pervasive. Instead, the prosecutor's statement was one sentence in the initial closing argument and was directly followed by an argument about T.E.'s testimony. And third, defense counsel did have the opportunity to address the prosecutor's statement but did not make efforts to do so.

## B.    Prosecutor's rebuttal closing argument

Appellant argues that the state committed misconduct in its rebuttal closing argument by speculating that appellant "might have altered or manufactured evidence." Specifically, appellant argues that there was no basis in the record to speculate that appellant altered or falsified the text messages between him and T.E.

A lawyer for the state "may present all legitimate arguments on the evidence and all proper inferences that can be drawn from that evidence in its closing argument." *State v. Peltier*, 874 N.W.2d 792, 804 (Minn. 2016) (quotation omitted) (first alteration in original). But "a lawyer may not speculate without a factual basis." *Id.* Nor may a lawyer "misstate the evidence or mislead the jury as to the inferences it may draw." *State v. Smith*, 876 N.W.2d 310, 335 (Minn. 2016) (quotation omitted). An argument is permissible and based on "a reasonable inference" if "*some* evidence" supports it. *See State v. Bobo*, 770 N.W.2d 129, 142 (Minn. 2009).

Even if we assume without deciding that the prosecutor's argument was unsupported by evidence and therefore plain error, any such error did not affect the appellant's substantial rights.

As noted above, once a defendant establishes plain error, the burden shifts to the state to show that "the plain error *did not* affect the defendant's substantial rights." *Epps*, 964 N.W.2d at 423 (citation omitted). To show that a plain error did not affect a defendant's substantial rights, the state must show that there is "no reasonable likelihood" that the misconduct significantly affected the verdict. *Dye*, 871 N.W.2d at 925. Relevant factors include "'the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions.'" *Id.* (quoting *Davis*, 735 N.W.2d at 682).

The state contends that there is no reasonable likelihood that the absence of the misconduct would have had a significant effect on the verdict because (1) the state's evidence was strong, (2) it was unlikely that the prosecutor's statement had a significant impact on the jury because it occurred during the rebuttal, and (3) the court fully instructed the jury on all relevant matters, including that closing arguments were not evidence.[1] Appellant counters that the state cannot prove that the prosecutor's misconduct did not affect his substantial rights because the evidence against him was "far from

---

[1] The state, relying on *State v. Ives*, 568 N.W.2d 710, 713 (Minn. 1997), also argues that defense counsel's failure to object to the closing argument indicates that the state's conduct was not prejudicial. The Minnesota Supreme Court, however, recently rejected this argument in *State v. Portillo*, __ N.W.2d __, 2023 WL 8610196, at *8 n. 9 (Minn. Dec. 13, 2023). The supreme court stated that "[b]ecause the modified plain-error test that we articulated in *Ramey* applies precisely to unobjected-to allegations of prosecutorial error, we decline to again consider the lack of an objection by defense counsel as a factor suggesting a lack of prejudice to the defendant." *Id.* Based on *Portillo*, we decline to consider defense counsel's lack of objection as a factor suggesting lack of prejudice.

overwhelming[,]" the errors were pervasive, and appellant could not effectively rebut the misconduct. We are not persuaded by appellant's argument.

First, as mentioned above, the record contains strong evidence of appellant's guilt. Second, the prosecutor's statement about the text messages was couched between an argument about the limited value of the text messages and a plea that the jury look at the texts carefully. And third, even though defense counsel was not able to address the text message comments because these statements were made in the state's rebuttal, the district court instructed the jury twice that the arguments and remarks of the attorneys are not evidence, and we assume that the jury followed the district court's instructions. *See Vang*, 774 N.W.2d at 578. Therefore, even if there was plain error, there was no reasonable likelihood that the misconduct significantly affected the verdict.

Appellant maintains that the cumulative effect of the prosecutor's errors deprived him of a fair trial. "An appellant may be entitled to a new trial in rare cases where the errors, taken cumulatively, have the effect of denying [the] appellant a fair trial." *State v. Fraga*, 898 N.W.2d 263, 278 (Minn. 2017) (quotation omitted). Appellant, however, failed to establish that more than one error existed.

## II.     The district court did not abuse its discretion by excluding evidence.

Generally, "[a]ll relevant evidence is admissible, except as otherwise provided" by law. Minn. R. Evid. 402. Evidence is relevant if it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. Minn. R. Evid. 401. "Evidentiary rulings rest within the sound discretion of the district court." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). "We will reverse evidentiary rulings only

if the district court clearly abused its discretion and the defendant was thereby prejudiced." *State v. Miller*, 754 N.W.2d 686, 700 (Minn. 2008) (quotation omitted). "A defendant is prejudiced by an evidentiary ruling when there is a reasonable probability that without the error the verdict might have been more favorable to the defendant." *Id*. (quotation omitted). "The defendant has the burden to establish both that the district court abused its discretion and that the error was prejudicial." *Id.*

Appellant contends that the district court violated his constitutional right to present a complete defense by excluding the jailer's testimony about the mark on appellant's head. According to appellant, the jailer's testimony corroborated his claim that T.E. assaulted him earlier that day and would demonstrate "the strained relationship between him and T.E., which in turn provided a possible motive for her to lie." Relying on *State v. Loving*, appellant characterizes this evidence as relationship evidence "that may be offered to show the strained relationship between the accused and the victim and is relevant to establishing motive and intent and is therefore admissible." 775 N.W.2d 872, 880 (Minn. 2009) (quotation omitted).

Although appellant characterizes the jailer's testimony as relationship evidence, appellant's purpose for offering the evidence was to attack T.E.'s credibility by showing T.E.'s bias against appellant. Under Minnesota Rule of Evidence 616, a party may introduce evidence of bias, prejudice, or interest of the witness for or against any party, to attack the witness's credibility. Evidence of bias, prejudice, or interest can be established by extrinsic evidence. Minn. R. Evid. 616 1989 comm. cmt. Even if the jailer's testimony had a permissible purpose under Minnesota Rule of Evidence 616, his testimony was not

13

relevant because it was not probative of the fact that appellant was assaulted, i.e., the jailer did not have personal knowledge of how appellant received the mark. Therefore, the district court did not abuse its discretion by excluding the jailer's testimony.

**III.     Appellant is not entitled to relief on his pro se arguments.**

In a pro se supplemental brief, appellant raises several issues. Appellant argues that the district court lacked jurisdiction, that there was insufficient evidence, that he received ineffective assistance of trial counsel, that the majority of T.E.'s testimony was inadmissible *Spreigl*[2] evidence, and that these errors in the aggregate severely prejudiced him.

First, appellant appears to argue that the district court lacked subject matter jurisdiction. But "[o]ur state constitution provides a broad grant of subject matter jurisdiction to the district court, providing that '[t]he district court has original jurisdiction in all civil and criminal cases.'" *In re Civil Commitment of Giem*, 742 N.W.2d 422, 429 (Minn. 2007) (quoting Minn. Const. art. VI, § 3). Here, the complaint charged a criminal offense. Therefore, the court had jurisdiction over the matter and appellant's first argument fails.

Second, appellant appears to argue that there was insufficient evidence because his conduct did not violate the felony domestic assault statute. In a criminal case, due process requires the prosecution to "prove every element of the offense beyond a reasonable doubt." *State v. Culver*, 941 N.W.2d 134, 142 (Minn. 2020). Here, the state was required

---

[2] *State v. Spreigl*, 139 N.W.2d 167, 167 (Minn. 1965).

to prove that appellant intentionally inflicted bodily harm on T.E. and T.E. was a member of appellant's household.

The standard of review differs when a conviction was supported by direct evidence versus circumstantial evidence. *See State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016). Direct evidence is evidence that is "based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). When the elements of an offense are supported by direct evidence, "we limit our review to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *Horst*, 880 N.W.2d at 40 (quotation omitted). The direct evidence based on the testimony of T.E. and the officer, who testified about what they saw, and the exhibits introduced through their testimony, was sufficient to allow the jury to find that appellant's conduct violated the felony domestic assault statute. *See State v. Hohenwald*, 815 N.W.2d 823, 832 (Minn. 2012) (explaining that when we consider a claim of insufficient evidence, we review the record to determine "whether the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." (quotation omitted)).

Third, appellant argues that the vast majority of T.E.'s testimony was inadmissible *Spreigl* evidence, and the prosecutor failed to give appellant notice that it was offering such evidence. "*Spreigl* evidence is evidence of a defendant's prior crimes, wrongs, or acts[.]" *State v. Asfeld*, 662 N.W.2d 534, 542 (Minn. 2003). T.E. did not testify about appellant's

prior crimes, wrongs, or acts. Therefore, T.E.'s testimony was not *Spreigl* evidence, and the state was not required to provide appellant with such notice.

Fourth, appellant argues that he received ineffective assistance of counsel because counsel failed to call T.E.'s roommate as a witness. "Generally, an ineffective assistance of counsel claim should be raised in a postconviction petition for relief, rather than on direct appeal." *State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000). "A postconviction hearing provides the court with additional facts to explain the attorney's decisions, so as to properly consider whether a defense counsel's performance was deficient." *Id.* (quotation omitted). Accordingly, an appellate court may decline to address the merits of an ineffective assistance of counsel claim if the record is insufficient. *See id.* The record before us is devoid of information needed to explain defense counsel's decisions.

Lastly, appellant argues that these errors in the aggregate severely prejudiced him. But "[c]umulative error exists when the cumulative effect of the errors and indiscretions, none of which alone might have been enough to tip the scales, operate to the defendant's prejudice by producing a biased jury." *State v. Penkaty*, 708 N.W.2d 185, 200 (Minn. 2006) (quotation omitted). Appellant has failed to establish the presence of multiple errors.

**Affirmed.**